**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00504-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Melvin Woods, | |
| Defendant. | |

Pending before the Court is Defendant Melvin Woods's ("Woods") motion for compassionate release (Doc. 59), which the government opposes (Doc. 62). For the following reasons, the motion will be denied.

## RELEVANT BACKGROUND

Woods has led, in many respects, an exemplary life. "He was class president of his high school, captain of the basketball team, and volunteered for activities for special needs students." (Doc. 31 ¶ 37.) After high school, Woods attended some community college and then worked as a volunteer coach, convenience store clerk, and as a caregiver in special needs group homes and at Goodwill. (*Id.* ¶¶ 37-43.) Woods also became a father in 2016 and acted as his child's primary caregiver. (*Id.* ¶ 33.) Before this case, Woods had no criminal history apart from a misdemeanor traffic offense. (*Id.* ¶¶ 23-26.)

In 2018, Woods made the tragic choice to attempt to supplement his income by selling drugs. (*Id.* ¶¶ 6-8.) One of Woods's clients, G.H., died from acute fentanyl poisoning after ingesting pills he had purchased from Woods. (*Id.* ¶ 6.) The pills appeared

to be oxycodone but contained fentanyl. (*Id.*) During a post-arrest interview, Woods admitted he knew the pills were laced with fentanyl or heroin. (*Id.* ¶ 8.)

Woods was charged with, and ultimately pleaded guilty to, the crime of fentanyl distribution. (*Id.* ¶ 3.) Sentencing took place in November 2019. Woods's advisory sentencing range was 121-151 months because the offense resulted in death. In their respective sentencing memos, the government requested a sentence of 120 months, which it viewed as necessary to achieve parity with other cases of fentanyl distribution resulting in death (Doc. 30), while Woods requested a sentence of 60 months in light of his lack of criminal history, ready acceptance of responsibility, and the non-violent nature of the offense (Doc. 32). During the sentencing hearing itself, the Court heard emotional statements from Woods's family members, who extolled his positive character, and from the victim's sister and wife, who described the devastating impact this crime has had on their lives.

The Court ultimately imposed a sentence of 84 months. (Docs. 37, 49.) In reaching this outcome, the Court offered the following explanation:

> This is among the most difficult cases I've had to sentence as a judge. It's heartbreaking. It's heartbreaking first and most important to the victim and the victim's family. I mean, losing a husband and having a young child who's going to grow up without their dad is just heartbreaking. Whatever I do today is not going to bring him back. But I need to reflect the seriousness of the . . . conduct in this case. And so I'm happy that I heard from the victim's family today. . . . It's heartbreaking from the defendant's family['s perspective] too. You know, I have a fair number of cases where I'm sentencing somebody and that side of the courtroom is empty. And I can tell from everything I've read and the documents here, in everything I've read about your background [and] hearing from your family that you have a wonderful family and you were brought up right. . . . You went out, you had a job, you served people in the community. I mean, this is just a tragedy. So, . . . I have to balance all those things.

At the time of sentencing, Woods had 195 days of presentence incarceration credit. (Doc. 31 at 1.) Thus, at present, Woods has spent about 20 months in custody, which is about 25% of his sentence. Unfortunately, it doesn't appear that Woods's transition to prison life has been seamless—the government has submitted evidence showing that

1 Woods incurred a disciplinary infraction in March 2020 for possessing a dangerous weapon. (Doc. 62-9.)

Woods is currently 30 years old. Woods contends that he is particularly susceptible to complications arising from COVID-19 because of his race (black), because he is overweight (5'9", 190 pounds), and because he was diagnosed by a prison medical provider in January 2020 as suffering from gastrointestinal bleeding, anemia, anorexia, unexplained weight loss, dysphagia, and persistent vomiting. (Doc. 59 at 14-16.) Woods further contends that his parents, who are currently acting as the caregiver for his child, are particularly susceptible to complications arising from COVID-19. (*Id.* at 16-17.) The government, in turn, has submitted evidence that the January 2020 medical record has a typo and should read that Woods does *not* suffer from any of the listed ailments. (Doc. 62 at 11-12, citing Doc. 62-7.) In reply, Woods disputes whether the record contains a typo, argues that the alleged presence of a typo only underscores the inadequacy of the medical care available in the Bureau of Prisons ("BOP"), and argues that it would violate his due process rights to resolve the typo issue in the government's favor without holding a hearing. (Doc. 64 at 5-6.)

It is undisputed that Woods has exhausted his administrative remedies, by unsuccessfully petitioning the BOP for compassionate release. (Doc. 59 at 10.)

On December 15, 2020, Woods (through counsel) filed a motion for compassionate release. (Doc. 59.)

On December 23, 2020, the government filed an opposition. (Doc. 62.)

On December 28, 2020, Woods filed a reply. (Doc. 64.)

### DISCUSSION

"The statute authorizing compassionate release as it exists today was first enacted as part of the Comprehensive Crime Control Act of 1984." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). "That original statute, unlike the current law, gave BOP exclusive power over all avenues of compassionate release. For over 30 years any motion for compassionate release had to be made by the BOP Director." *Id.*

This statutory framework changed in 2018, when Congress passed the First Step Act. *Id.* at 233. Among other things, the First Step Act removed "the BOP as the sole arbiter of compassionate release motions." *Id.* Now, although the "BOP is still given the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf, under Congress' mandate a defendant now has recourse if BOP either declines to support or fails to act on that defendant's motion." *Id.*

The standards for evaluating a compassionate release motion are set forth at 18 U.S.C. § 3582(c)(1)(A). Among other things, the court "may" grant a compassionate release motion and reduce a defendant's term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). The applicable policy statement, in turn, is found at USSG § 1B1.13. It provides that the court may reduce a term of imprisonment if three conditions are met: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." *Id.*

Here, the parties dispute whether Woods's medical conditions constitute extraordinary and compelling reasons that statutorily qualify him for relief—the government argues that race alone is insufficient, that Woods is only mildly overweight and is not obese, and that no other significant health complications are present. The Court finds it unnecessary to resolve this dispute because, even assuming that Woods's conditions are qualifying, the Court would exercise its discretion to deny relief. It must not be overlooked that this case resulted in the loss of life. G.H.'s wife is now a widow and G.H.'s son will now grow up without a father. Although Woods didn't intend to kill G.H., he knew the pills he was peddling were laced with possibly toxic substances. When considering a motion for compassionate release under § 3582(c)(1)(A), a court must

consider the § 3553 sentencing factors to the extent they are applicable, and here the Court concludes that it would offend § 3553—in particular, the requirement that a sentence "promote respect for the law" and "provide just punishment"—to allow Woods to serve a sentence of only 20 months for such a significant crime that has altered the trajectory of so many lives. The Court already imposed a sentence that was substantially below the advisory Guidelines range (and substantially less than the government's requested term) in an effort to account for Woods's many positive attributes and future promise. Further reducing that sentence by 75% would not result in justice to the victims of Woods's offense.

Accordingly, **IT IS ORDERED** that Woods' motion for compassionate release (Doc. 59) is **denied**.

Dated this 30th day of December, 2020.

Dominic W. Lanza
United States District Judge